UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT DAVIS, and

SHANE ANDERS,

              Plaintiffs,                        Case No. 20-cv-12127

v.                                      Honorable Nancy G. Edmunds

WAYNE COUNTY BOARD OF CANVASSERS,

              Defendant

and

KYM WORTHY,

              Intervenor-Defendant.

_____/

**OPINION AND ORDER DENYING PLAINTIFFS' MOTION FOR LEAVE TO FILE
SECOND AMENDED COMPLAINT [55], DECLINING TO EXERCISE
SUPPLEMENTAL JURISDICTION OVER STATE LAW CLAIMS, GRANTING
DEFENDANT'S MOTION TO DISMISS [29] AND FINDING AS MOOT MOTION TO
DISMISS [18], MOTION TO STRIKE [28], AND MOTION FOR PARTIAL SUMMARY
JUDGMENT AS TO STATE LAW CLAIM [34]**

       This case concerns the August 4, 2020 primary election for the office of Wayne

County Prosecutor. Before the Court are several outstanding motions—Plaintiff's Motion

for Leave to File a Second Amended Complaint [55], Defendant's Motion to Dismiss the

Complaint [18], Defendant's Motion to Dismiss the Amended Complaint [29], Plaintiff's

Motion for Partial Summary Judgment [34] and Plaintiff's Motion to Strike [28]. For the

reasons below, the Court DENIES Plaintiffs' Motion for Leave to File a Second Amended

Complaint [55], DECLINES TO EXERCISE SUPPLEMENTAL JURISDICTION over

Plaintiffs' state law Claims (Counts Nine and Ten), and GRANTS the Board's Motion to Dismiss as to Counts One through Eight of the Amended Complaint [29]. The Court also FINDS AS MOOT the Board's Motion to Dismiss the original complaint [18], Plaintiffs' Motion to Strike [28], and Plaintiffs' Motion for Partial Summary Judgment [34]. Because the Court finds its decision process would not be significantly aided by oral argument, the motions have been decided on the briefs pursuant to Eastern District of Michigan Local Rule 7.1(f).

I.     **Background**

   **A. Factual Background**

Plaintiffs Robert Davis and Shane Anders are Wayne County voters who voted in the August 4, 2020 primary election and Anders was a write-in candidate for Wayne County prosecutor in the Republican primary election.[1] Defendant Wayne County Board of Canvassers (the "Board") is the four-member board charged with canvassing, certifying, determining and declaring the results of elections held in Wayne County. In their amended complaint, Plaintiffs allege the Board violated their rights under federal and constitutional law and violated Michigan's Open Meetings Act. Plaintiffs alleged injuries mainly center around the allegation that incumbent Wayne County Prosecutor Kym Worthy's name was printed on election ballots and votes cast for her were counted and certified despite the fact that Worthy (1) failed to file a timely post-election campaign finance statement in accordance with Mich. Comp. Laws § 168.848 before she assumed

---

[1]  While not relevant to the motion before this Court in this case, the Sixth Circuit has noted that "Plaintiff Robert Davis and his attorney, Andrew Paterson, have a prolific history litigating cases in Michigan state courts and federal courts. Their filings could be defined, in many instances, as repetitive, vexatious, and frivolous." *Davis v. Johnson,* 664 F. App'x 446, 450 (6th Cir. 2016).

the role of Wayne County Prosecutor in 2017; and (2) later filed an Affidavit of Identity to run for re-election in 2020 and verified, as part of that affidavit, that "all statements, reports, late filing fees, and fines" had been filed or paid. According to Plaintiffs, this "false statement" disqualified Worthy from the August 4, 2020 Democratic primary election ballot.[2] Moreover, Plaintiffs allege that Worthy did not file two copies of her Affidavit of Identity as required by Michigan law.[3]

Plaintiffs were not the first to challenge the inclusion of Worthy's name on the primary election ballot. On or about June 2, 2020, Victoria Burton-Harris, who at the time was running against Worthy for Wayne County Prosecutor, filed a legal challenge with the Wayne County Clerk and Wayne County Election Commission based upon the same facts Plaintiffs allege here. (*See* ECF No. 2-3.) Burton-Harris' challenge was discussed during the Wayne County Election Commission's June 5, 2020 meeting and ultimately rejected. (*See* ECF No. 2-4.) In the written rejection, the Wayne County clerk indicated that a facial review of Worthy's affidavit of identity "determined that all sections deemed mandatory by the Michigan Campaign Finance Act have been complied with and the requirements of MCL 168.558(2) have been met." (*Id.*) The clerk also advised that she did not have the power to investigate "the truth or falsity of a candidate's affirmation in the Campaign Finance Compliance Statement and Attestation section of the Affidavit of Identity." (*Id.*) Accordingly, the clerk certified a list of candidates that included Worthy as

---

[2] Plaintiffs rely on Michigan Election Law Act 116 of 1954 which provides, in relevant part, that "[a]n officer shall not certify to the board of election commissioners the name of a candidate who fails to comply with this section, or the name of a candidate who executes an affidavit of identity that contains a false statement with regard to any information or statement required under this section . . ." Mich. Comp. Laws § 168.558(4).
[3] *See* Mich. Comp. Laws §§ 168.558(1), 168.550.

a candidate for Wayne County Prosecutor and the Election Commission approved the printing of the August 2020 primary ballots.

The same day the Wayne County Clerk rejected her challenge, Burton-Harris filed a verified complaint and emergency motion in state court in an attempt to preclude Worthy's name from appearing on the ballots. On June 11, 2020, Plaintiff Davis moved to intervene as a plaintiff in that lawsuit, but his motion was denied by the court given the time sensitivity of the issues before the court and the fact that Davis' interests were adequately represented by Burton-Harris. (*See* ECF No. 2-6); *see also Burton-Harris v. Wayne Cty. Clerk*, ---N.W.2d ----, No. 353999, 2021 WL 1845800 at *3 (Mich. Ct. App. May 7, 2021) (discussing the reasons behind the trial court's denial of Davis' motion). On June 15, 2020 the state circuit court entered a final order denying Burton-Harris' requested relief and dismissing the case. (ECF 2-6).

Burton-Harris did not appeal the final order, but Davis appealed the denial of his motion to intervene and Burton-Harris' emergency motion for a temporary restraining order, mandamus relief, and declaratory relief. The Michigan Court of Appeals affirmed the lower court's order and held that the motions to intervene, for writ of mandamus, and for declaratory judgment were barred by laches given the times of filing and narrow deadlines at issue in election matters. *See Burton-Harris,* 2021 WL 1845800 at *9, *supra*.

### B. Procedural Background

Plaintiffs Davis, Venias Jordan, Jr. and Leigh Reed-Pratt[4] initiated this lawsuit by filing a four-count complaint on August 7, 2020. (ECF No. 1.) Along with their complaint, Plaintiffs filed an *Ex Parte* Motion For Temporary Restraining Order, or in the alternative,

---

[4] Plaintiffs Venias Jordan, Jr. and Leigh Reed-Pratt have since been dismissed and Shane Anders has been added as a plaintiff. (*See* ECF No. 21.)

Motion for Preliminary Injunction. (ECF No. 6.) On August 17, 2020, this Court denied the temporary restraining order and set a briefing schedule on the motion for preliminary injunction. (ECF No. 12). The Board filed its brief on August 27, 2020 (ECF No. 16) and a motion to dismiss the complaint on September 3. (ECF No. 18). Over the course of the next few weeks, Plaintiffs withdrew the Motion for Preliminary Injunction (ECF No. 17), filed an Amended Complaint (ECF No. 21) and filed over 15 additional motions including multiple motions that sought expedited briefing schedules and permission to file briefs in excess of standard page limitations. Plaintiff Anders also petitioned the Sixth Circuit Court of Appeals for a writ of mandamus requiring this Court to expedite its decision on his *ex parte* motion for a temporary restraining order, but his petition was denied in a written order dated September 16, 2020. In addition to denying the petition, the Sixth Circuit opined on the merits of this case stating that it "doubt[ed] the validity of [Anders'] claims." (ECF No. 39.)

Plaintiffs' Amended Complaint (ECF No. 21) dismissed two of the original Plaintiffs (not Davis), added a new Plaintiff (Anders), removed some facts and claims regarding a candidate for another office and added eight new claims under federal and state law. Plaintiffs Davis and Anders each individually bring several claims and several claims are brought by both plaintiffs. In Counts One and Two, Davis alleges his right to vote and substantive due process rights were violated when the Board counted votes for Worthy; Count Three is an Equal Protection "Class-of-One" Claim in which Davis alleges his rights were violated when the Board treated him differently than others by refusing to answer his questions; Count Four alleges that Mich. Comp. Laws § 168.582 is unconstitutionally vague on its face and as applied to Anders; Count Five alleges that Mich. Comp. Laws

§§ 168.871(1) and (3) violate Anders' voting rights; Count Six alleges that Mich. Comp. Laws §§ 168.871(1) and (3) violate Anders' Fourteenth Amendment right to Equal Protection; Count Seven alleges that Mich. Comp. Laws §§ 168.871(1) and (3) violate Anders' Due Process rights under the Fourteenth Amendment; Count Eight, brought by both Davis and Anders, alleges Plaintiffs' Procedural Due Process rights were violated by the Board when it failed to provide Plaintiffs with copies of the minutes from its meetings within the time frame required under Michigan law; Count Nine seeks a declaratory judgment that clarifies whether Mich. Comp. Laws § 168.871(2) requires the Board to recount certain absentee votes; and Count Ten is a state law claim that alleges the Board violated Michigan's Open Meetings Act by Failing to provide Plaintiffs with copies of the minutes from its meetings, allowing an unauthorized person to post notices of its meetings, failing to properly post notices of its special meetings, and deliberating in private.

Defendant diligently responded to each of Plaintiff's motions that required a response. Additionally, Defendant filed a second Motion To Dismiss applicable to the Amended Complaint. (ECF No. 29.)

## II.   Analysis

### A.  Plaintiffs' Motion to Amend the Complaint [55]

Plaintiffs seek leave to amend their complaint a second time in order to add two additional claims by Anders against the Board. (ECF No. 55.) The first of these claims, Count Nine of the Proposed Second Amended Complaint, alleges Anders' procedural due process rights were violated by the Board when it failed to properly recount absentee votes from precinct #23 in accordance with Mich. Comp. Laws § 168.871(2). The second

claim, Count Ten of the Proposed Second Amended Complaint, alleges the Board retaliated against Anders by failing to properly recount the absentee ballots cast in precinct #23 because of Anders' political association with Davis. The proposed Second Amended Complaint adds no details to the existing claims. The Board opposes Plaintiffs' motion and filed a response. (ECF No. 65.) Plaintiffs did not file a reply and the time for doing so has passed.

The allegations relevant to the new claims are as follows: Plaintiff Shane Anders, a resident of the City of Dearborn, was a write-in candidate in the August 4, 2020 Republican primary election for the office of Wayne County Prosecutor. (*See Proposed Second Amended Complaint*, ECF No. 55-1 ¶ 8.) Anders, his wife, and his son voted for Anders by absentee ballot. (¶ 122, 123.) But the Board tallied and certified Anders as having received only one vote in the City of Dearborn. (¶ 124.) Anders thereafter filed a sworn petition and $100 deposit to request a recount of certain precincts including absentee votes. (¶ 125.) The Board considered Anders' recount petition at its September 2, 2020 public meeting held via Zoom. (¶ 126.) Davis participated in the meeting as a representative and challenger on behalf of Anders. (¶ 127.) The Board approved and authorized Anders' petition for a recount. (¶ 172.) But members of the Board are biased against Plaintiffs because a majority of them support Kym Worthy. (¶ 226.) Accordingly, the Board determined that the absentee ballots cast in precinct #23 were not eligible to be recounted. (¶ 228.) The Board also used this as an opportunity to retaliate against Anders for his political association with Davis, for whom they have publicly expressed "ill will, animus, dislike and hatred." (¶¶ 227, 232.)

The Board disagrees with Plaintiffs' allegations and argues Plaintiffs' motion to file a second amended complaint is an attempt to delay an adverse decision on the pending motion to dismiss. According to the Board, Anders was not certified as the Republican candidate because he received eleven votes, far less than the minimum number of votes required by statute. *See* Mich. Comp. Laws § 168.582; ECF No. 48, PageID.1348 (explaining that  § 168.582 required Anders to obtain a minimum of 4,073 votes to be certified as the Republican candidate for prosecutor in the November 2020 general election). The Board therefore believes the amendment is meritless and would be futile. Further, the Board argues that allowing the amendment would cause the Board prejudice as it would be forced to expend time and resources drafting a third motion to dismiss. Finally, the Board points out that Anders is not an attorney and therefore is not qualified to hold the position of Wayne County Prosecutor despite his inclusion as a write-in candidate during the Republican primary. Notably, Plaintiffs did not file a reply brief in support of their motion to amend. Thus, despite having had the opportunity to do so, Plaintiffs did not respond to any of the Board's arguments as to why leave to amend should be denied.

### 1.  Legal Standard

Federal Rule of Civil Procedure 15(a) governs motions to amend the complaint. Under this rule, a party seeking to amend its pleadings at this stage of the proceedings must obtain the opposing party's written consent or this Court's leave. Fed. R. Civ. P. 15(a). Plaintiffs do not have the consent of the Board to amend their complaint so they must obtain leave of this Court in order to file their proposed Second Amended Complaint.

The decision as to whether justice requires the amendment is committed to the district court's sound discretion. *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 3211, 330 (1971). Abuse of that discretion occurs when a district court fails to state the basis for its denial or fails to consider the competing interests of the parties and likelihood of prejudice to the opponent. *Foman v. Davis*, 371 U.S. 178, 182 (1962). Although Rule 15(a)(2) instructs the court to "freely give leave when justice so requires," justice does not require an amendment in cases where there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment," among other things. *Benzon v. Morgan Stanley Distributors, Inc.*, 420 F.3d 598, 613 (6th Cir. 2005).

### 2.  Analysis

The Court agrees with the arguments presented by the Board and also finds Plaintiffs' motion was brought in bad faith. The timing of Plaintiff's motion is particularly telling in this respect—Plaintiff asked the Court for leave to amend their complaint on October 2, 2020—nearly one month after a recount occurred and the results were certified and after the Board's second motion to dismiss was filed. Plaintiffs could have added the extra counts in their first amended complaint, filed September 4, 2020, but instead they seemed to have waited to use the proposed amended complaint as a delay tactic to avoid dismissal.

Plaintiffs cite case law from this circuit that states "a plaintiff must be given at least one chance to amend the complaint before the district court dismisses the complaint with prejudice." *United States ex rel Bledsoe v Cmty. Health Sys.*, 342 F.3d 634, 644 (6th Cir.

2003) (quoting *EEOC v Ohio Edison Co.*, 7 F.3d 541, 546 (6th Cir. 1993)). But the Proposed Second Amended Complaint does not make changes that would repair any defects with Plaintiffs' pleading. Rather, as stated above, Plaintiffs seek to add two entirely new claims.

Additionally, Plaintiffs do not allege that Shane Anders is an attorney, that he was qualified for a position as Wayne County Prosecutor, or that he was close to the number of votes required to be certified as the Republican candidate. Indeed, Plaintiffs do not explain how a recount done in a different manner would produce a different result. *See People ex rel. Hughes v. May*, 3 Mich 598 (1855) (requiring county prosecutors to be members of the state bar).

Plaintiffs also do not allege sufficient facts to support the additional claims in their proposed second amended complaint. To bring a procedural due process claim, a plaintiff must allege "(1) he had a life, liberty, or property interest protected by the Due Process Clause; (2) he was deprived of this protected interest; and (3) the state did not afford him adequate procedural rights prior to depriving him of the property interest." *Women's Med. Pro. Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006). Count Nine alleges the Board did not recount the relevant votes in accordance with § 168.871(2), but even if Plaintiff had evidence to support this assertion, the Sixth Circuit has held that "violations of state law do not 'automatically translate into a deprivation of procedural due process under the United States Constitution.' " *Wedgewood Ltd. P'ship I v. Twp. of Liberty, Ohio*, 610 F.3d 340, 354 (6th Cir. 2010) (quoting *DePiero v. City of Macedonia*, 180 F.3d 770, 788 (6th Cir. 1999)). Because Plaintiff does not otherwise provide facts sufficient to state a claim for relief under the Due Process Clause, this claim would not survive a motion to dismiss

and thus, is futile. *See Thiokol Corp. v. Department of Treasury, State of Michigan, Revenue Div.,* 987 F.2d 376, 382–83 (6th Cir.1993).

Similarly, Anders' First Amendment retaliation claim in the Proposed Second Amended Complaint would not survive a motion to dismiss. To state a claim of retaliation in violation of the First Amendment, a plaintiff must allege the following elements: "(1) the plaintiff engaged in constitutionally protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) the adverse action was motivated at least in part by the plaintiff's protected conduct." *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 583 (6th Cir. 2012).

Anders alleges, without sufficient factual detail, that the Board retaliated against him because of his political association with Davis. In support of this contention, Anders relies on an unnamed "democratic member[ ] of the Defendant Board of Canvassers" who allegedly "told Plaintiff Davis personally that Plaintiff Anders' efforts to get certified and have certain precincts recounted would 'go nowhere' because of the hate members of the Defendant Board of Canvassers have towards Plaintiff Davis." (ECF No. 55-1, PageID.1864). But this vague statement alone does not meet the threshold for the amount of factual detail required to support a plausible claim for relief. See *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007).

Indeed, Plaintiffs allege earlier in their proposed second amended complaint that the Board "approved and authorized Plaintiff Anders' sworn petition for a recount of certain election day and absentee voting precincts, which included Plaintiff Anders' very own voting precinct in Dearborn." (ECF No. 55-1, PageID.1847.) That recount was to be

held September 4, 2020 although Plaintiffs feared the application of Mich. Comp. Laws § 168.871 would prevent certain votes from being recounted.[5] (*Id.* at PageID.1848.) Plaintiffs' real dispute then is with the Michigan law that could have prevented ballots cast for Anders from being recounted.

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.' " *Estate of Barney v. PNC Bank, Nat'l Ass'n*, 714 F.3d 920, 924 (6th Cir. 2013) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting Fed. R. Civ. P. 8(a)(2))). Accordingly, the Court concludes that Plaintiffs have failed to state a First Amendment retaliation claim against the Board in their Proposed Second Amended Complaint. Thus, the proposed amendment is futile.

The Court rules "are to be construed to secure the just, speedy, and inexpensive determination of every action." *Minor v. Northville Public Schools*, 605 F. Supp 1185, 1202 (ED Mich 1985). For this and the reasons stated above, Plaintiffs' motion for leave to file a second amended complaint is denied and Plaintiffs' First Amended Complaint remains the operative complaint in this case. (ECF No. 21.)

### B. Supplemental Jurisdiction

The Court also declines to exercise supplemental jurisdiction over Plaintiff's existing state-law claims, Counts Nine and Ten of Plaintiffs' First Amended Complaint.[6] Supplemental jurisdiction is a " 'doctrine of discretion, not of plaintiff's right.' " *City of*

---

[5] Mich. Comp. Laws § 168.871 protects election integrity by prohibiting a recount of votes stored in a ballot container with a broken seal, among other things.

[6] In Count Nine, Plaintiffs ask for a declaratory judgment regarding the requirements of Mich. Comp. Laws § 168.871(2);  in Count Ten, Plaintiffs allege the Board violated Michigan's Open Meetings Act by Failing to provide Plaintiffs with copies of the minutes from its meetings, allowing an unauthorized person to post notices of its meetings, failing to properly post notices of its special meetings, and deliberating in private.

*Chicago v. Int'l College of Surgeons*, 522 U.S. 156, 173 (1997) (quoting *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966)). "[D]istrict courts can decline to exercise supplemental jurisdiction over pendant claims for a number of valid reasons." *City of Chicago*, *supra*.

District courts should deal with cases involving supplemental jurisdiction in a manner that serves the principles of economy, convenience, fairness, and comity. *Id.* The supplemental jurisdiction statute, 28 U.S.C. § 1367, codifies these principles and provides that district courts may decline to exercise supplemental jurisdiction over a claim when: (1) the claim raises a novel or complex issue of state law; (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction; (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction. 28 U.S.C. § 1367(c). A district court's decision as to whether to exercise supplemental jurisdiction over a plaintiff's state-law claims is reviewed for abuse of discretion. *Soliday v. Miami Cnty.*, Ohio, 55 F.3d 1158, 1164 (6th Cir. 1995).

The Court concludes that Plaintiffs' state-law claims would substantially expand the scope of this case beyond that necessary and relevant to the federal claims. The state-law claims also raise novel and complex issues of state law. The Court therefore declines to exercise supplemental jurisdiction over the state-law claims this action and dismisses Counts Nine and Ten. After dismissal of Plaintiffs' state-law claims, only Counts One through Eight of the First Amended Complaint remain.

### C. Wayne County Board of Canvasser's Motion to Dismiss the Amended Complaint

The Board moves to dismiss Plaintiffs' remaining claims under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (ECF No. 29.) Plaintiff filed a response (ECF No. 62) and brief in support and the Board filed a reply (ECF No. 64).

### 1. Legal Standards

#### a. Fed. R. Civ. P. 12(b)(1)

Under Federal Rule of Civil Procedure 12(b)(1), a party may, as the Board did here, challenge the Court's subject matter jurisdiction over Plaintiffs' claims. *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990). When the defendant makes such a motion, the plaintiff bears the burden of proving subject matter jurisdiction. *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990).

Under a 12(b)(1) motion to dismiss, a party can make either a facial or factual attack on subject matter jurisdiction. *Ohio Nat. Life Ins. Co.*, 922 F.2d at 325. A facial attack "merely questions the sufficiency of the pleading," and so the court takes the complaint's allegations as true. *Id.* But when the factual predicate to subject matter jurisdiction is at issue, the court must weigh the conflicting evidence to determine whether subject matter jurisdiction exists. *Id.* Therefore "the court is empowered to resolve factual disputes when subject matter jurisdiction is challenged." *Moir*, 895 F.2d at 269.

#### b. Fed. R. Civ. P. 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a case where the complaint fails to state a claim upon which relief can be granted. When reviewing a motion to dismiss under Rule 12(b)(6), a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable

14

inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). But the court "need not accept as true legal conclusions or unwarranted factual inferences." *Id.* (quoting *Gregory v. Shelby County*, 220 F.3d 433, 446 (6th Cir. 2000)). Furthermore, a plaintiff's factual allegations "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show entitlement to relief." *LULAC v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007). Dismissal is appropriate if the plaintiff failed to offer sufficient factual allegations that make the asserted claim plausible on its face. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

In addition, if a court considers matters outside of the pleadings, the court must convert the motion into one for summary judgment under Rule 56. *Turner v. Corr. Med. Servs., Inc.*, No. 13-11783, 2014 WL 861579, at *2 (E.D. Mich. Mar. 5, 2014). However, "[w]hen a court is presented with a 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Coll. Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

### 2. Analysis

#### a. Mootness

The Board argues that Plaintiffs' claims are moot given that the August primary election (and now, the November general election) has come and gone. Because mootness is a jurisdictional limit on the Court's power, the Court will address that argument first. *Pettrey v. Enter. Title Agency, Inc.*, 584 F.3d 701, 703 (6th Cir. 2009)

(explaining that once a case no longer involves a live controversy it is outside the jurisdiction of federal courts).

Federal courts may only adjudicate actual cases and live controversies. *DeFunis v. Odegaard*, 416 U.S. 312, 316 (1974). If events occurring before or during the pendency of a case make it "impossible for the court to grant any effectual relief whatever. . ." the case may be dismissed as moot. *Coal. for Gov't Procurement v. Fed. Prison Indus., Inc.*, 365 F.3d 435, 458 (6th Cir. 2004) (quoting *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992)). But "even the availability of a partial remedy is sufficient to prevent [a] case from being moot." *Calderon v. Moore*, 518 U.S. 149, 150 (1996) (per curiam) (citing *Church of Scientology of Cal.*, 506 U.S. at 13). Thus, whether a claim is moot turns on whether a court can provide "any effectual relief."

In this case, Plaintiffs seek injunctive and declaratory relief, but also ask for "compensatory damages" and "exemplary and punitive damages" for each claim. (ECF No. 21.) Although injunctive relief may no longer be possible as it relates to the 2020 primary or general election, the Board provides no authority to suggest that legal damages are not available as a remedy if Plaintiffs prove their claims. Additionally, the strict time constraints involved in elections create a reasonable expectation that the issues involved here could recur yet escape judicial review. *See Moore v. Ogilvie*, 394 U.S. 814, 816 (1969). Accordingly, the Court declines to dismiss the Amended Complaint as moot.

### b.  Davis' Right To Vote and Substantive Due Process Claims

Counts One and Two of the Amended Complaint allege that Davis' right to vote and substantive due process rights were violated when the Board counted votes cast for

Kym Worthy, thereby "diluting" Plaintiff's vote for Worthy's opponent, Burton-Harris. The Board argues Plaintiffs have not established standing to bring these claims. (ECF No. 29, PageID.984.)

"The irreducible constitutional minimum of standing contains three requirements: [1] injury in fact, [2] causation, and [3] redressability." *American Civil Liberties Union v. Nat'l Sec. Agency*, 493 F.3d 644 (6th Cir. 2007) (quoting *Steel Co. v. Citizens for a Better Environment,* 523 U.S. 83, 102–03. " 'Injury in fact' is a harm suffered by the plaintiff that is 'concrete and actual or imminent, not conjectural or hypothetical.' " *Id.* " 'Causation' is 'a fairly traceable connection between the plaintiff's injury and the complained-of conduct of the defendant.' " *Id.* " 'Redressability' is 'a likelihood that the requested relief will redress the alleged injury.' " *Id.* "This 'irreducible constitutional minimum' applies to every claim sought to be litigated in federal court." *Id.*

The Court agrees that Plaintiffs lack standing on these claims. First, Plaintiffs have not alleged a "concrete and actual" injury. Plaintiffs provide no authority that vote "dilution" is actionable under these circumstances. Worthy was certified by the Wayne County clerk as a candidate Wayne County Prosecutor and the Election Commission approved the printing of the August 2020 primary ballots that included Worthy's name. Moreover, even if Plaintiffs did allege an injury in fact, they have not provided facts to show causation. Plaintiff has provided no authority to support the contention that the Board has a duty to investigate a candidate's qualifications or that it cannot legally count votes for a certified candidate whose name appeared on the ballot. Thus, Plaintiffs do not have standing to bring these claims against the Board.

Additionally, even if Plaintiffs did have standing, the *Rooker-Feldman* doctrine divests this Court of subject-matter jurisdiction on these claims. *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). The *Rooker-Feldman* doctrine applies to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). Under *Rooker-Feldman*, "claims raised in state-court proceedings as well as claims that are 'inextricably intertwined' with [those] claims" are barred from being relitigated in federal courts. *Pieper v. Am. Arb. Ass'n, Inc.*, 336 F.3d 458, 460 (6th Cir. 2003) (citation omitted).

Counts One and Two of the Amended Complaint are "inexplicably intertwined" with the claims brought by Burton-Harris in state court in June of 2020. There, Burton-Harris sought to have Worthy's name removed from the ballot due to the same alleged violations of campaign finance and reporting laws that Plaintiffs identify here. *See id.*; *Burton-Harris*, 2021 WL 1845800, *supra*. The source of Plaintiff Davis' injury, if he could show one, would therefore be the state court's decision to allow Worthy's name to appear on the ballot.

Plaintiff argues he is not a "state-court loser" as his motion to intervene in the state court case was denied, but the Sixth Circuit Court of Appeals has explicitly rejected that same argument in another election matter initiated by Plaintiff Davis, *Davis v. Johnson*, 664 F. App'x 446, 448 (6th Cir. 2016). There, the Sixth Circuit affirmed the district court's ruling that the *Rooker-Feldman* doctrine precluded subject matter jurisdiction in a case where, as here, Davis unsuccessfully moved to intervene as a party. *Id.* at 448-49.

### c.  Davis' Equal Protection Claim

In Count Three, Davis alleges that he was denied equal protection under the law when the Board refused to answer some of his questions during the citizen participation portion of the Board's August 18, 2020 meeting. According to complaint, Davis asked the Board five questions. First, he asked how many write-in votes Anders had received in the Republican primary and whether Anders would be certified as the Republican nominee. (ECF No. 21 ¶ 94-97.) The Board answered these questions but did not have an answer for a third question posed by Davis regarding whether a public notice was posted to inform the public when votes would be canvassed. (¶ 95-99.) The Board was then advised by counsel not to answer Davis' fourth and fifth questions regarding who posted the notice for the August 18, 2020 meeting and whether the Board had approved a resolution authorizing a specific person to post notices. (¶ 100-103.)

"The Equal Protection Clause prohibits discrimination by government which either burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis for the difference." *TriHealth, Inc. v. Board of Comm'rs, Hamilton Cnty., Ohio*, 430 F.3d 783, 788 (6th Cir. 2005). Here, Davis relies on that third argument and asserts an equal protection claim against the Commission, based on a "class-of-one" theory. *See Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam).

To assert a cognizable class-of-one equal protection claim, a plaintiff "must plead and prove that they were 'intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.' " *Rapp v. Dutcher*, 557 F. App'x 444, 449 (6th Cir. 2014) (quoting *Willowbrook, supra*). Davis has not sufficiently

alleged either one. Without any supporting factual allegations, Davis asserts that the Board willingly answered questions posed by other members of the public but refused to answer his questions due to "personal animus and ill will." (ECF No. 21 ¶ 107-10.)

The Amended Complaint contains no factual allegations that the Board answered every question posed by each participant that attended the meeting or that Davis was treated differently from any other person who asked the same or similar questions. Moreover, as Plaintiffs' Amended Complaint explains, the Board *did* provide answers to at least some of Davis' questions pertaining to different topics. This suggests there was a rational explanation for the Board's refusal to answer certain questions, on the advice of counsel, and that "personal animus and ill will" were not to blame.

Davis has not stated a cognizable class-of-one equal protection claim. *See Davis v. Detroit Public Sch. Commty. Dist.*, 835 F. App'x 18 (6th Cir. 2020) (finding "Davis has not stated a cognizable Equal Protection claim" under class-of-one theory, "because he has identified no similarly situated individuals.").

### d.  The Constitutionality of Mich. Comp. Laws § 168.582

Count Four alleges Mich. Comp. Laws § 168.582 is unconstitutionally vague both on its face and as applied to Anders. That statute provides:

> A person who is voted for on a party ballot for a state, district, township, county, city, or ward office . . . whose name is not printed on the ballot and who has not filed a nominating petition for the office voted for, shall not be considered nominated as the candidate of the party for the office, nor be certified as a nominee *unless the person receives a total vote equal to not less than .15 of 1% of the total population*, as reflected by the last official federal census, of the district for which nomination is sought, *but not less than 10 votes* for the office, *or a total vote equal to 5% of the greatest number of votes cast by the party for any office* at the primary in the state, congressional, or other district, township, county, city, or

> ward, *for a candidate or for all candidates for nomination for an office for which only 1 person is to be nominated, whichever is greater.* . . .

Mich. Comp. Laws § 168.582. Anders' claims the statute is unconstitutionally vague because its wording causes him to be "unsure and equally unclear as to what the standard or threshold, if any, he must meet" to be certified as the Republican candidate for prosecutor on the general election ballot. (ECF No. 21 ¶ 142.)

A statute is void for vagueness if it "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *United States v. Williams*, 553 U.S. 285, 304 (2008). Here, § 168.582 provides a clear formula to determine the minimum amount of votes a write-in candidate must receive in the primary election to be nominated as a candidate for office on the general election ballot. This mathematical formula is readily understood, even if somewhat complicated, and it is not in danger of being applied in a discriminatory manner. Based upon the statute and election and census data, one can discern that Anders would have needed to receive the greater of 10 votes, 2,730 votes, and 4,073 votes to be certified as the Republican candidate,[7] barring any other obstacles to his candidacy.[8] The Court therefore finds Count Four fails to state a plausible claim for relief.

---

[7] Under the first prong, .15 of 1% of the total population of Wayne County (1,820,584 according to the most recent census at the time) is 2,730.876. Under the second prong, 5% of the greatest number of votes cast by the party for a candidate for an office for which only one person was to be nominated (81,462 votes were cast for John James) is 4,073.1. If one were to round down the decimals in favor of Plaintiffs, he would be left with needing the greater of 10 votes, 2,730 votes, and 4,073 votes. According to the Board, Anders was not nominated as the Republican candidate because the eleven votes he received fell short of the 4,073-vote threshold.

[8] As explained above, Anders is not a member of the state bar of Michigan so it is unlikely he would have survived a legal challenge to his candidacy for county prosecutor. *See People ex rel. Hughes v. May*, 3 Mich 598 (1855).

### e.  The Constitutionality of Mich. Comp. Laws § 168.871(1) and (3)

Counts Five, Six and Seven, brought pursuant to 42 U.S.C. § 1983, pertain to two

sections of a Michigan statute aimed at protecting vote integrity during a recount:

> (1) The board of canvassers conducting a recount pursuant to this chapter shall recount all ballots of a precinct using an electronic voting system unless 1 or more of the following circumstances exist:
> (a) The seal on the transfer case or other ballot container is broken or bears a different number than that recorded on the poll book, the breaking or discrepancy is not explained to the satisfaction of the board of canvassers, and security of the ballots has not been otherwise preserved.
> (b) The number of ballots to be recounted and the number of ballots issued on election day as shown on the poll list or the computer printout do not match and the difference is not explained to the satisfaction of the board of canvassers.
> (c) The seal used to seal the ballot label assembly to a voting device in the precinct is broken or bears a different number than that recorded in poll records and the ballot labels or rotation of candidates' names is different than that shown by other voting devices in the precinct and records of the board of election commissioners.
>
> *          *          *
>
> (3) If a board of canvassers conducting a recount pursuant to this chapter determines that the ballots of a precinct are not eligible for recount under this section, the original return of the votes for that precinct shall be taken as correct.

Mich. Comp. Laws § 168.871.

To survive a motion to dismiss a claim under 42 U.S.C. § 1983, a plaintiff must

properly allege two elements: (1) the defendant was acting under color of state law, and

(2) the offending conduct deprived the plaintiff of rights secured under federal law. *Block*

*v. Ribar*, 156 F.3d 673, 677 (6th Cir. 1998). Under each of the aforementioned counts,

Plaintiffs allege "on information and belief, the Defendant Board of Canvassers will apply

the provisions of Mich. Comp. Laws §§ 168.871(1) and (3) to prevent the recount of the

election day and absentee voting precincts Plaintiff Anders requested to be recounted."

22

(ECF No. 21 ¶¶ 157, 175, 191.) This action, Plaintiff claims, would violate Plaintiff's fundamental right to vote and to have his vote counted (Count Five), his Fourteenth Amendment right to Equal Protection (Count Six), and his substantive and procedural due process rights under the Fourteenth Amendment (Count Seven).

Plaintiffs infer that their claims regarding the constitutionality of § 168.871 arise from a long history of Sixth Circuit and Supreme Court precedent pertaining to the fundamental right of citizens to vote and to have their votes counted. *See, e.g.*, *Northeast Ohio Coalition for Homeless v. Husted*, 696 F.3d 580, 591 (6th Cir. 2012) ("[o]ur Constitution accords special protection for the fundamental right of voting, recognizing its essential role in the preservati[on] of all rights"); *Wesberry v. Sanders*, 376 U.S. 1, 17 (1964) ("[o]ther rights, even the most basic, are illusory if the right to vote is undermined"); *Gray v. Sanders*, 372 U.S. 368, 380 (1963) (Every voter's vote is entitled to be counted once. It must be correctly counted and reported"); *United States v. Mosley*, 238 U.S. 383, 386 (1915) ("the right to have one's vote counted is as open to protection . . . as the right to put a ballot in a box"); *see also* ECF No. 62, p. 12-19.

Plaintiffs' concerns regarding the fundamental right to vote are valid, but Counts Five through Seven pertain to a *recount*, not the initial casting of ballots. The Michigan Supreme Court has held, "[t]he proceedings for a recount are purely statutory, and the statutory requirements must be observed." *Ryan v. Montgomery*, 240 N.W.2d 236, 238 (Mich. 1976) (quoting *Wheeler v. Coleman*, 142 N.W. 570, 571 (Mich. 1913)). "The evident purpose of the precautions prescribed in [§ 871(1)] is to preserve the integrity of the ballots, so that, if necessary to resort to a recount thereof, it may be done with the assurance of having the ballots present the identical verity they bore when cast." *Id.*

23

(quoting *Smith v. Board of Canvassers of Saginaw Cty*, 189 N.W. 856 (Mich. 1922). Accordingly, "[n]oncompliance with statutory requirements concerning recounts precludes a recount." *Id.*

Plaintiffs fear the Board will apply §§ 168.871(1) and (3) "to prevent the recount of the election day and absentee voting precincts Plaintiff Anders requested to be recounted." (ECF No. 21 ¶¶ 157, 175, 191.) Adopting Plaintiffs' argument would result in a departure from decades of Michigan election law. Accordingly, and because this specific provision of Michigan Election Law has repeatedly been upheld, Plaintiffs here failed to allege facts that would show "the offending conduct [of the Board] deprived [them] of rights secured under federal law." *Block*, 156 F.3d at 677. Plaintiffs therefore failed to state a claim with regard to Counts Five, Six, and Seven.

### f. Plaintiffs' Due Process Rights as Related to the Open Meetings Act

The last of Plaintiffs' remaining claims is Count Eight in which Plaintiffs allege their procedural due process rights were violated when the Board failed to provide Plaintiffs with copies of approved or proposed minutes from its meetings within the time required under Michigan's Open Meetings Act ("OMA"). This Count, while labeled a federal claim, relates entirely to OMA, the state law that is the subject of Count Ten of the Amended Complaint—a claim over which this Court declined to exercise supplemental jurisdiction. *See* Section B, *supra*.

Plaintiffs provide nothing more than conclusory allegations stating their due process rights were violated when the Board failed to comply with OMA. (See ECF No. 21 ¶213-14.) But the court "need not accept as true legal conclusions or unwarranted factual inferences." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (quoting

*Gregory v. Shelby County*, 220 F.3d 433, 446 (6th Cir. 2000)). Indeed, the Sixth Circuit has confirmed that "legal conclusions masquerading as factual allegations will not suffice." *Eidson v. State of Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007). Accordingly, the Court finds Plaintiffs failed to state a claim in Count Eight.

### D.  Remaining Pending Motions

Given the Court's ruling on the Board's motion to dismiss the Amended Complaint and its denial to exercise supplemental jurisdiction on Counts Nine and Ten, the Court finds the following motions to be moot: the Board's Motion to Dismiss the Original Complaint [18], Plaintiffs' Motion to Strike the Board's Motion to Dismiss the Original Complaint [28], and Plaintiffs' Motion for Partial Summary Judgment [34].

## III.   Conclusion

For the reasons stated above, the Court hereby **DENIES** Plaintiffs' Motion for Leave to File a Second Amended Complaint [55] and **DECLINES TO EXERCISE SUPPLEMENTAL JURISDICTION** over Plaintiffs' state law Claims (Counts Nine and Ten), dismissing those claims without prejudice. The Court also **GRANTS** the Board's Motion to Dismiss [29] as to Counts One through Eight of the Amended Complaint and dismisses those claims with prejudice. Finally, the Court **FINDS AS MOOT** the Board's Motion to Dismiss the original complaint [18], Plaintiffs' Motion to Strike [28], and Plaintiffs' Motion for Partial Summary Judgment [34].

All claims have been resolved and this order closes the case.

SO ORDERED.          s/Nancy G. Edmunds
                                   Nancy G. Edmunds
                                   United States District Judge

Dated: August 29, 2021

I hereby certify that a copy of the foregoing document was served upon counsel of record on August 29, 2021, by electronic and/or ordinary mail.

<u>s/Lisa Bartlett</u>
Case Manager